IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| FINLEY WELDON,<br><br>                Plaintiff,<br><br>      vs.<br><br>UNITED STATES CENTER FOR SAFESPORT; SEAN GARDNER; CHOW, INC. D/B/A CHOW GYMNASTICS AND DANCE INSTITUTE; CHOW COMMERCIAL HOLDINGS, L.L.C.; LIANG QIAO a/k/a LIANG CHOW; and LIWEN ZHUANG,<br><br>                Defendants. | 4:26-cv-00001-SHL-SBJ<br><br>**ORDER GRANTING DEFENDANT UNITED STATES CENTER FOR SAFESPORT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| HAILEY GEAR,<br><br>                Plaintiff,<br><br>      vs.<br><br>UNITED STATES CENTER FOR SAFESPORT; SEAN GARDNER; CHOW, INC. D/B/A CHOW GYMNASTICS AND DANCE INSTITUTE; CHOW COMMERCIAL HOLDINGS, L.L.C.; LIANG QIAO a/k/a LIANG CHOW; and LIWEN ZHUANG,<br><br>                Defendants. | 4:26-cv-00004-SHL-SBJ<br><br>**ORDER GRANTING DEFENDANT UNITED STATES CENTER FOR SAFESPORT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

## I.    INTRODUCTION.

In these two overlapping cases, Plaintiffs Finley Weldon and Hailey Gear bring claims against six Defendants arising out of abuse they suffered while participating in a gymnastics program. Defendant United States Center for SafeSport ("SafeSport") moves to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing, among other things, that it is entitled to regulatory immunity from claims of this nature and that the claims are preempted by federal law anyway. For reasons set forth in full below, the Court agrees that SafeSport is immune from common law tort claims in the circumstances presented here. The Court therefore GRANTS SafeSport's Motions to Dismiss.

1

## II.     BACKGROUND.

### A. Plaintiffs' Allegations.

In ruling on a Motion to Dismiss, the Court accepts all facts in the plaintiff's pleading as true and construes those facts in the light most favorable to the plaintiff. *See Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). Although Weldon and Gear filed separate Petitions at Law and Jury Demands under separate case numbers, the relevant allegations for purposes of SafeSport's Motions to Dismiss are identical. Accordingly, and in the interest of simplicity, this section will cite only to Weldon's Petition at Law and Jury Demand, found at Electronic Case Filing ("ECF") Docket Entry No. 1-2 in Case No. 4:26-cv-00001. This section will focus on the allegations relevant to SafeSport's Motions to Dismiss and therefore is not a complete recitation of the facts alleged in Weldon's Petition.

Defendant Chow, Inc. d/b/a Chow Gymnastics and Dance Institute ("Chow Gymnastics") is a gymnastics training facility in West Des Moines, Iowa. (ECF 1-2, ¶ 20.) Weldon participated in the gymnastics program at Chow Gymnastics starting in 2015 to advance her goal of being an Olympic gymnast. (Id., ¶¶ 42, 44.) In September 2018, Defendant Sean Gardner was hired as a gymnastics coach at Chow Gymnastics. (Id., ¶ 38.) Prior to being hired, Gardner "had a long history of sexual abuse and misconduct while working as a gymnastics coach at gyms located in Louisiana and Mississippi, including, but not limited to, Gardner photographing and videorecording minor females aged approximately between six and fourteen years-old in a gym restroom." (Id., ¶ 34.)

From Fall 2018 through March 2021, Weldon was subjected to repeated and ongoing physical, emotional, and sexual abuse, harassment, and molestation by Gardner while she trained at Chow Gymnastics. (Id., ¶ 45.) This resulted in physical, mental, psychological, and emotional injuries. (Id.) Weldon was a minor under the age of fourteen when the abuse occurred. (Id., ¶ 46.) The abuse included Gardner inappropriately touching Weldon's inner thighs, vagina, buttocks, anus, breasts, and stomach, as well as verbally and physically abusing her, making inappropriate sexual comments and innuendo, engaging in emotional grooming and abuse, and filming and photographing her while she stretched for the purpose of capturing her exposed genitalia. (Id., ¶ 48.)

SafeSport is a private, non-profit corporation organized under the laws of the State of Colorado. (Id., ¶ 10.) Congress has recognized SafeSport as the "official safe sport organization"

2

for protecting young athletes from abuse. (Id., ¶ 31.) SafeSport has authority to investigate and resolve allegations of misconduct against coaches and others who have regular contact with or authority over minor athletes. (Id., ¶ 32.) Weldon alleges, "[u]pon information and belief," that SafeSport was notified by the parents of a gymnast in Mississippi in December 2017 that Gardner: (a) required gymnasts to hug him after every practice; (b) kicked a gymnast out of practice for refusing to hug him; (c) disciplined and intimidated a gymnast by taking her into his office for twenty-five minutes for a closed-door meeting in which he verbally abused her and hugged and kissed her without consent; (d) routinely gave gymnasts long kisses on the forehead; (e) drank alcohol excessively, including in the presence of minor gymnasts; (f) verbally and emotionally abused gymnasts; (g) made crude and sexually suggestive jokes to minor gymnasts; (h) posted inappropriate photos and comments on social media; and (i) stalked and intimidated minor gymnasts, including one had been instructed to cease all communication and contact with. (Id., ¶ 35.)

Weldon further alleges, again upon information and belief, that SafeSport was notified by Gardner's former employer in December 2017 or early 2018 that Gardner engaged in "inappropriate behaviors with minor gymnasts, including grooming behaviors." (Id., ¶ 36.) She also alleges upon information and belief that a parent of a minor female gymnast reported Gardner and another Chow Gymnastics coach to SafeSport in September 2020 for improper behavior. (Id., ¶ 51.) Weldon alleges that SafeSport did not properly investigate these reports. (Id., ¶¶ 36–37.) She alleges that SafeSport had a duty to protect her from the abuse she experienced. (Id., ¶¶ 56, 58.) Weldon alleges that SafeSport should have revoked or suspended Gardner's coaching credentials or otherwise taken action to prevent him from coaching minor gymnasts. (Id., ¶ 37.)

Weldon brings nine causes of action in total, five of which are asserted against SafeSport: Count I, Negligence (id., ¶¶ 61–73); Count III, Negligent Supervision (id., ¶¶ 88–105); Count V, Negligent Failure to Warn (id., ¶¶ 120–28); Count VII, Intentional Infliction of Emotional Distress (id., ¶¶ 143–50); and Count IX, Fraudulent Concealment/Constructive Fraud (id., ¶¶ 166–95). SafeSport moves to dismiss her claims, as well as those of Gear in the related case.

> B. *Additional Facts Alleged in SafeSport's Motions to Dismiss.*

Although SafeSport acknowledges that a motion to dismiss is "not the proper vehicle" to address disputed issues of fact, it nonetheless alleges that Plaintiffs' Petitions are not accurate as it relates to when and how complaints were made regarding Gardner's conduct. (ECF 29-1, pp.

10–11.) According to SafeSport, no complaints were made against Gardner on matters pertinent to Plaintiffs' claims prior to March 2022. (Id.) SafeSport's factual assertions in this regard appear to directed toward the "court of public opinion," not this Court, as it is well established that factual disputes cannot be entertained—much less resolved—on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). SafeSport's factual assertions therefore will not be considered in this ruling.

## III.    LEGAL STANDARDS.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). In determining plausibility, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012) (per curiam). The Court is not obligated to accept legal conclusions, however, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*, 855 F.3d 949, 955 (8th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

"Though 'matters outside the pleadings' may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Enervations, Inc. v. Minn. Min. & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)). "In general, materials embraced by the complaint include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'" *Id.* (quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)).

## IV.    LEGAL ANALYSIS.

### A.  The Safe Sport Authorization Act.

SafeSport argues that it is entitled to immunity from Plaintiffs' claims because Congress empowered SafeSport to perform a quasi-judicial or prosecutorial function in connection with protecting athletes from abusive coaches. SafeSport argues that it cannot perform this role effectively if it faces liability for its acts or omissions.

SafeSport is not a governmental agency per se, but rather a private, non-profit entity incorporated in Colorado. (ECF 1-2, ¶ 10.) Nonetheless, Congress designated SafeSport as the "independent national safe sport organization … for the United States" in the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017 (the "Safe Sport Authorization Act" or, simply, the "Act"). *See* 36 U.S.C. § 220541(a)(1)(A).

Congress enacted the Safe Sport Authorization Act in response to decades of abuse within USA Gymnastics at the hands of Dr. Larry Nassar. *See Nothstein v. USA Cycling*, 499 F. Supp. 3d 101, 117 (E.D. Pa. 2020). The Act requires SafeSport to, among other things, "maintain an office for response and resolution that shall establish mechanisms that allow for the reporting, investigation, and resolution, pursuant to subsection (c), of alleged sexual abuse in violation of [SafeSport's] policies and procedures." *Id*. § 220541(a)(1)(D). The Act further requires SafeSport to ensure that the reporting and resolution mechanisms "provide fair notice and an opportunity to be heard and protect the privacy and safety of complainants," *id.* § 220541(a)(1)(E), ensure that regulated organizations and entities follow SafeSport's practices and procedures, *id.* § 220541(a)(1)(F), and ensure that the investigation and enforcement mechanisms are "carried out in a manner that provides procedural due process protections to the [accused party]," *id.* § 220541(a)(1)(H).

The requisite due process protections include: (i) written notice of the allegations; (ii) the right to be represented by counsel or other advisor; (iii) an opportunity to be heard during the investigation; (iv) a reasoned written decision in any case where violations are found; and (v) the ability to challenge sanctions in a hearing or arbitration. *Id.* § 220541(a)(1)(H)(i)–(v). The Act allows SafeSport to use arbitration to resolve allegations of sexual abuse. *Id.* § 220541(c)(1). It also contains a provision entitled "Preservation of rights" that states:

> Nothing in this section shall be construed as altering, superseding, or otherwise affecting the right of an individual within the Center's jurisdiction to pursue civil remedies through the courts for personal injuries arising from abuse in violation of the Center's policies and procedures, nor shall the Center condition the participation of any such individual in a proceeding described in paragraph (1) upon an agreement not to pursue such civil remedies.

*Id.* § 220541(c)(2).

The Act states that except in cases of actual malice, "an applicable entity shall not be liable for damages in any civil action for defamation, libel, slander, or damage to reputation arising out

of any action or communication, if the action arises from the execution of the responsibilities or functions described in this section, section 220542, or section 220543." *Id.* § 220541(d)(1)–(2). The phrase "applicable entity" is defined to include SafeSport itself, as well entities and organizations directly involved in youth sports. *Id.* § 220541(d)(4). The Act gives federal courts removal jurisdiction over "[a]ny civil action brought in a State court against [SafeSport] relating to the responsibilities of [SafeSport] under this section…without regard to the amount in controversy or the citizenship of the parties involved." *Id.* § 220541(d)(3)(A).

SafeSport is required to send annual reports to Congress, *id.* § 220541(h)(3)(A), and is subject to oversight from the Comptroller General of the United States, *id.* § 220541(j)(3). The entity's operating costs are funded through a mandatory annual payment of twenty million dollars from "the corporation," *id.* § 220541(g)(1), which is defined elsewhere to mean the United States Olympic and Paralympic Committee (the "USOC"), 36 U.S.C. § 220501(b)(7). "The [USOC] may use funds received from 1 or more national governing bodies to make a mandatory payment required by paragraph (1)." 36 U.S.C. § 220541(g)(2). The Act requires the funds from the USOC or national governing bodies to be used "primarily for the purpose of carrying out the duties and requirements under sections 220541 through 220543 with respect to the investigation and resolution of allegations of sexual misconduct, or other misconduct, made by amateur athletes." *Id.* § 220541(g)(4)(A). Not less than fifty percent of SafeSport's funds must be used for "processing the investigation and resolution of allegations described in subparagraph (A)." *Id.* § 220541(g)(4)(B)(i)(I). If SafeSport does not use all its funds in any given year, it "may retain not more than 25 percent of such amounts as reserve funds" and must return the rest to the USOC and/or national governing bodies. *Id.* § 220541(g)(4)(B)(ii). SafeSport is not permitted to use funds from the USOC and/or national governing bodies for lobbying or fundraising expenses. *Id.* § 220541(g)(4)(B)(iii).

B.  *SafeSport Is Entitled to Immunity from Plaintiffs' Claims.*

Federal courts have repeatedly and consistently held that entities created or empowered by Congress to perform prosecutorial or quasi-judicial regulatory duties are entitled to immunity from common law claims arising out of the performance of those duties. Some courts refer to this as "regulatory immunity." *See Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1210 (9th Cir. 1998), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016); *Huntley v. Chicago Bd. of Options Exch.*, 161 F. Supp. 3d

612, 616 (N.D. Ill. 2015). Others have suggested that it is better understood as a form of preemption in the sense that the Congressional scheme of delegated authority would be undermined if the entity's regulatory duties end up being defined through state common law principles. *See In re Series Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 113–14 (D.C. Cir. 2008). "Whether analyzed under preemption doctrine or a theory of regulatory immunity, the result is the same: plaintiffs cannot raise a common law complaint against defendants based on duties arising under [the federal statute establishing those duties]." *Id.* at 113.

The doctrine has been applied to various self-regulatory organizations, or "SROs," including:

(i)     the Financial Industry Regulatory Authority ("FINRA") (formerly known as the National Association of Securities Dealers ("NASD")), *see Sparta Surgical Corp.*, 159 F.3d at 1210;

(ii)    the New York Stock Exchange ("NYSE"), *see D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir. 2001);

(iii)   the National Association of Securities Dealers Automated Quotations ("NASDAQ"), *see DL Cap. Grp., LLC v. Nasdaq Stock Mkt., Inc.*, 409 F.3d 93, 99 (2d Cir. 2005); and

(iv)    the Chicago Board of Options Exchange and Options Clearing Corporation, *see Huntley*, 161 F. Supp. 3d at 616.

"There is no question that an SRO and its officers are entitled to absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities." *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011). "The party asserting immunity bears the burden of demonstrating its entitlement." *Id.* at 116.

Although neither side has cited an Eighth Circuit case directly applying regulatory immunity (or preemption) to state common law claims against an SRO created or authorized under federal law, analogous Eighth Circuit cases indicate clear support for giving common law immunity to such an entity when it performs regulatory functions. In *Honn v. National Ass'n of Securities Dealers, Inc.*, 182 F.3d 1014, 1017–18 (8th Cir. 1999), the Eighth Circuit held that the plaintiff's common law claims against arbitrators with the NASD (now known as FINRA) were barred by "arbitral immunity." Similarly, in *Olson v. National Ass'n of Securities Dealers*, 85 F.3d 381, 382–83 (8th Cir. 1996), the Eighth Circuit held that the NASD was immune from liability for improperly selecting an arbitration panel, "even when the selection violates the [NASD's] own rules." Finally, in *Dunham v. Wadley*, 195 F.3d 1007, 1011 (8th Cir. 1999), the Eighth Circuit held

7

that members of a state licensure board were entitled to absolute immunity for actions "functionally comparable to those of judges and prosecutors." These cases show the Eighth Circuit's agreement with the principles underlying cases like *Sparta Surgical Corp.* and *D'Alessio*.

Against this legal backdrop, the Court concludes that SafeSport is entitled to immunity from Plaintiffs' claims. The Safe Sport Authorization Act unambiguously designates SafeSport as a regulator for the amateur sports industry and empowers the entity to perform prosecutorial and quasi-judicial duties. These duties include, among other things, receiving complaints about sexual abuse, investigating them, and taking action against any person found to be responsible for misconduct, up to and including prohibiting that person from participating in amateur athletic competitions. *See generally* 36 U.S.C. § 220541(a)(1)(D)–(F). SafeSport is required to carry out these duties in a way that ensures due process for the accused party, *see id.* § 220541(a)(1)(H), and regulated entities within the scope of the Act must comply with SafeSport's disciplinary decisions, *see, e.g.*, *id.* § 220541(h)(2). Based on these provisions, among others, the District of Colorado concluded that SafeSport was entitled to absolute immunity from common law and statutory claims arising out of its alleged negligence in handling complaints. *See Gilbert v. U.S. Olympic Comm.*, No. 18-CV-00981, 2019 WL 10252758, at *6 (D. Colo. Mar. 6, 2019).

This Court agrees with *Gilbert*. SafeSport is performing a quintessential regulatory function when it receives and adjudicates complaints and therefore cannot be sued under common law theories for deficiencies in how it performs that work. *See id.*; *accord, e.g.*, *DL Cap. Grp., LLC*, 409 F.3d at 99 (holding that NASDAQ was entitled to absolute immunity for "conduct consistent with the quasi-governmental powers delegated to it by the NASD pursuant to [a federal statute] and the regulations and rules promulgated thereunder").

In arguing otherwise, Plaintiffs focus, first, on the "preservation of rights" provision in the Safe Sport Authorization Act, which states that "[n]othing in this section shall be construed as altering, superseding, or otherwise affecting the right of an individual within the Center's jurisdiction to pursue civil remedies through the courts for personal injuries arising from abuse in violation of the Center's policies and procedures…." 36 U.S.C. § 220541(c)(2). Plaintiffs' position might have merit if it was Chow Gymnastics or some other regulated entity that was attempting to argue immunity or preemption. As to those entities, § 220541(c)(2) is designed to preserve the ability of injured parties like Plaintiffs to pursue relief through common law claims. *See, e.g.*, *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 703 (4th Cir. 2015) ("[A] savings clause counsels

against a finding that Congress intended to sweep aside all state claims in a particular area."). In other words, Congress wanted to make clear that courts should not interpret the Safe Sport Authorization Act as completely preempting all common law causes of action that otherwise would be available to injured parties. *See In re NOS Commc'ns, MDL No. 1357*, 495 F.3d 1052, 1058 (9th Cir. 2007) ("A savings clause is fundamentally incompatible with complete field preemption….").

This does not mean the savings clause authorizes common law claims against SafeSport itself in a situation where the Act directs that entity to serve purely regulatory functions. "A savings clause should not be read to save those common law rights, 'the continued existence of which would be absolutely inconsistent with the provisions of the act.'" *Carstensen v. Brunswick Corp.*, 49 F.3d 430, 432 (8th Cir. 1995) (quoting *Texas & Pac. Ry. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 446 (1907)), *abrogated on other grounds by Sprietsma v. Mercury Marine, a Div. of Brunswick Corp.*, 537 U.S. 51 (2002). Here, if SafeSport is exposed to liability for how it handles its investigative and adjudicatory responsibilities, it will undermine the entity's ability to perform those responsibilities in the first place. *See Gilbert*, 2019 WL 10252758, at *6 ("[I]f SafeSport were subject to suit by every disappointed party in those reports [of sexual abuse], it would lead to the 'avalanche of suits' that immunity must protect against." (quoting *Forrester v. White*, 484 U.S. 219, 226 (1988))). Indeed, the Safe Sport Authorization Act establishes only twenty million dollars in annual funding for SafeSport, at least half of which must be spent on investigative and adjudicatory responsibilities. 36 U.S.C. § 220541(g)(1), (4). It is hard to see how SafeSport could perform within this budget—much less comply with the statutory directive to spend at least half of its money on investigation and adjudication—if it is constantly subjected to expensive and time-consuming litigation. *See Moe v. MTD Prods., Inc.*, 73 F.3d 179, 182–83 (8th Cir. 1995) ("The goals and policies of a statute must guide the interpretation of its savings clause."). The savings clause therefore does not save Plaintiffs' claims against SafeSport from dismissal.

The fact that SafeSport can be sued in some circumstances does not change the Court's interpretation of the savings clause. *See id.* § 220541(d)(3)(A) (giving federal courts removal jurisdiction over claims against SafeSport "relating to the responsibilities of [SafeSport] under this section"). For example, if SafeSport were to breach a lease or wrongfully terminate an employee, it would be amenable to common law or statutory claims. *See Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1297 (11th Cir. 2007) ("When an SRO is not performing a purely

9

regulatory, adjudicatory, or prosecutorial function, but rather acting in its own interest as a private entity, absolute immunity from suit ceases to obtain."). But this is not the situation here. Plaintiffs' claims arise entirely out of how SafeSport handled (or, more precisely, *failed* to handle) its regulatory responsibilities. Regulatory immunity applies in these circumstances. *See DL Cap. Grp., LLC*, 409 F.3d at 99; *D'Alessio*, 258 F.3d at 105; *Sparta Surgical Corp.*, 159 F.3d at 1210.

Plaintiffs' final argument is that immunity should apply, if at all, only when SafeSport affirmatively takes action against someone, not when it neglects to act after receiving a complaint. (ECF 33-1, pp. 13–16.) Courts have squarely rejected this argument, holding that regulatory immunity "extends both to affirmative acts as well as to an SRO's omissions or failure to act." *Standard Inv. Chartered, Inc.*, 637 F.3d at 115; *accord, e.g., In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 448 (S.D.N.Y. 2013) (citing cases). These cases align with cases applying the larger doctrine of prosecutorial immunity, which recognize that "absolute immunity must also protect the prosecutor from damages suits based on his decision *not* to prosecute." *Schloss v. Bouse*, 876 F.2d 287, 290 (2d Cir. 1989); *see also, e.g., Ludwig v. Berks County*, 313 F. App'x 479, 482 (3d Cir. 2008) ("District Attorney Mark Baldwin is entitled to absolute prosecutorial immunity from Ludwig's claim that he failed to prosecute private criminal complaints that she filed against the other defendants."); *Becks v. Plymouth Cnty. Superior Ct.*, 511 F. Supp. 2d 203, 206 (D. Mass. 2007) (holding that absolute immunity protected prosecutors who allegedly "declined to initiate an investigation or prosecution at the request of the plaintiffs"). Under the well-established principles set forth in these cases, SafeSport is immune from common law claims relating to the performance of its regulatory duties, irrespective of whether those claims arise out of action or inaction.

## V.   CONCLUSION

Because SafeSport is entitled to regulatory immunity from claims like the ones raised by Plaintiffs here, the Court GRANTS the Motions to Dismiss in Case Nos. 4:26-cv-00001 (ECF 29) and 4:26-cv-00004 (ECF 29). SafeSport is dismissed from the cases.

**IT IS SO ORDERED.**

Dated: May 12, 2026

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE